## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ALYSSA HANSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRY CLUB INC, d/b/a GOLDRUSH SHOWBAR,<br><br>Defendant. | Civil Action No.:<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Alyssa Hanson ("Hanson" or "Plaintiff"), individually and on behalf of all similarly situated employees, brings this collective action lawsuit against Defendants Country Club, Inc. d/b/a Goldrush Showbar, ("Defendant"), seeking to recover for Defendant's violations of the Fair Labor Standards Act. Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

### <u>INTRODUCTION</u>

1.     As explained herein, under applicable employment laws all employees are entitled to premium overtime compensation for all hours worked in excess of

forty in a given workweek, unless the employee is determined to be exempt. However, Defendant (as defined herein) improperly classified Plaintiff and other exotic entertainers ("Dancers") as "independent contractors."

2.      Consequently, Defendant failed to pay Plaintiff and class members at least the applicable minimum wage.  In addition, Defendant improperly collects a portion of the tips Plaintiff and other Dancers receive from customers.

3.      Further, Defendant regularly required Plaintiff and class members to work in excess of forty hours per week, and failed to pay them premium overtime compensation as required by applicable employment laws.

4.      As set forth herein, such conduct is in violation of applicable federal wage and hour laws.

5.      Dancers in Atlanta, including Plaintiff and her current and former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners.  *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U.J. Gender Soc. Pol'y & L 465, 466 (1999).

6.      Accordingly, adult entertainment clubs such as Defendant's Goldrush Showbar, located at 2608 Metropolitan Parkway SW in Atlanta, Georgia 30315,

are well-positioned to take advantage of Dancers and routinely deny them basic workplace rights.

7.     Over the past two decades, the Department of Labor ("DOL") and courts across the country have recognized that Dancers are employees, not independent contractors, and thus entitled to protection under various state and federal wage and hour laws.

8.     Despite these significant strides, adult night clubs in Atlanta and across the country still routinely deny Dancers the basic protections they are accorded under federal law.  Indeed, the Goldrush Showbar is no exception.  As set forth herein, it regularly deprives Dancers of their rights under federal law. Plaintiff brings this lawsuit to address these improper pay practices.

## SUMMARY OF CLAIMS

9.     Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

10.     In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Dancers who: 1) have worked for
> Defendant within the statutory period covered by this
> Complaint; 2) as of the date of the filing of this
> Complaint, have not signed a document which sets forth

their purported agreement to arbitrate their claims and/or
limit their ability to litigate their claims on a class-wide
basis; and 3) elect to opt-in to this action pursuant to the
FLSA, 29 U.S.C. § 216(b) ("Nationwide Collective
Class").

11.    Plaintiff alleges on behalf of the Nationwide Collective Class that
they are: (i) entitled to unpaid minimum wages from Defendant for hours worked
for which Defendants failed to pay the mandatory minimum wage, as required by
law; (ii) entitled to unpaid overtime wages for all hours worked in excess of forty
in a work week; and (iii) entitled to liquidated damages pursuant to the FLSA, 29
U.S.C. § 201 *et seq.*

## PARTIES

12.    Plaintiff Alyssa Hanson is a resident of the state of Georgia who is
employed by Defendant as a "Dancer" at their Metropolitan Parkway location.
Plaintiff has worked at Defendant's club since 2011.   While employed by
Defendant, Plaintiff has been improperly classified as an independent contractor
and, consequently, Defendant failed to compensate Plaintiff properly for all hours
worked.

13.    Plaintiff has consented in writing to be a Plaintiff in this action and
will file an executed Consent to Sue form.

14.    Defendant Country Club, Inc. is a Georgia corporation with a principal address at 2555 Chantilly Drive, Atlanta, Georgia 30324.    Upon information and belief, Country Club, Inc. operates an adult night club located at 2608 Metropolitan Parkway SW in Atlanta, Georgia 30315 under the name Goldrush Showbar.

15.    Defendant employed Plaintiff as a Dancer.    Upon information and belief, at all relevant times, Defendant's annual gross volume of sales made or business done was not less than $500,000.00.

16.    At all relevant times Defendant has transacted business, including the employment of Dancers, within the state of Georgia, including within this district.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over all claims in this action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) as Defendant is a resident of this district and a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district.

19.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

20.     The crux of the FLSA is, *inter alia*,: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; (ii) that all employees are entitled to premium overtime compensation for all hours worked in excess of 40 hours a week; and (iii) that all gratuities earned by an employee are the property of the employee.

21.     Contrary to these basic protections, Defendant improperly classified its Dancers, including Plaintiff, as "independent contractors" despite Defendant's near total control over them.  Consequently, Plaintiff and the members of the Class were:  (i) deprived of the mandated minimum wage for all hours they worked; (ii) deprived of premium overtime compensation for all hours worked in excess of 40 per workweek; (iii) forced to improperly share a percentage of their gratuities with Defendant; and (iv) forced to reimburse Defendant for its ordinary business expenses.

22.     Plaintiff and the members of the Class are, or were, Dancers who worked at Defendant's business location at 2608 Metropolitan Parkway SW, Atlanta, Georgia.

23.     The Goldrush Showbar is operated by Defendant under uniform policies applicable to all the members of the Class.  Through these policies and

6

procedures, Defendant maintains significant supervision and control over Plaintiff and members of the Class.

24.     Notwithstanding Defendant's classification of Dancers as independent contractors, as set forth below, due to the amount of control Defendant has over its Dancers, Dancers are legally Defendant's employees.

### Hiring, Firing, and Scheduling

25.     Defendant has the power to hire and fire Dancers and has rules governing the conditions under which Dancers work.

26.     Defendant's scheduling policy requires that all Dancers stay until the end of their shift.

27.     Dancers are required to participate in a "Review," a set which involves all Dancers present.

28.     If a Dancer misses a scheduled shift, is late for a shift, leaves early, or does not participate in the "Review," she is required to pay a fine.

### House Fees & Fines

29.     Rather than pay its Dancers the applicable minimum wage, Defendant classified its Dancers as independent contractors and required the Dancers to pay

Defendant in order to work at Defendant's establishment. Consequently, Defendant does not compensate Dancers in an amount at least equal to the mandated minimum wage for each hour worked during their shift.

30.     Further, Defendant required its Dancers, including Plaintiff and members of the Class, to pay "House Fees" for each shift that Dancers work.

31.     Typically, the House Fees are $30 per shift, with $5 of that amount paid to the "House Mom." If a Dancer is late for their scheduled shift, Defendant assesses a $5 "late fee" for every 5 minutes a Dancer is late, up to $20.

32.     Importantly, a Dancer must pay all fees every night she works regardless of the amount of tips she receives. Accordingly, a Dancer must pay the fees even if that means borrowing money from another Dancer or using the club's ATM machine.

33.     In addition to these fees, the Goldrush Showbar routinely issues fines to its Dancers for failing to comply with Defendant's policies and procedures. Fines range from $15 to $500 depending on the infraction.

34.     Indeed, Defendant has at least eight (8) "Enforced Fines" that the Dancers are subjected to. They include: (i) leaving early ($25 fine), (ii) late for stage set ($15 fine), (iii) failing to dress in accordance with the dress code, (iv) late for a shift ($5-20 fine), (v) failing to appear for a scheduled special event shift

($100 fine), (vi) failing to participate in the "Review" (a set where all dancers must appear) ($25-50 fine), (vii) eating or possessing food brought from outside the club ($500 fine), and (viii) using cell phones or other electronic devices while on stage or on the floor ($100 fine).

35.     Further, if a Dancer wishes to engage in certain behavior, they must pay Defendant a set amount.  For example, if a Dancer wishes to leave before the end of her scheduled shift, she is required to pay Defendant $25.

### Tip Retention & Mandatory Tip Outs

36.     It is black letter law that tips received by an employee are the employee's tips and an employer has no ownership interest in said tips.  Indeed, according to the DOL's Regulations, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA."  29 C.F.R. § 531.52.

37.     Despite this plain fact, Defendant unlawfully retained a portion of tips Dancers received from Defendant's customers.

38.     Moreover, Defendant also mandates the fees a Dancer may charge customers for her services.  By way of example, Defendant maintains a policy establishing the amount a Dancer is required to charge for private performances.

39.     For example, Defendant mandates that a "table dance" for one song is $10, that a "couch dance" in the private VIP section is $20 per song, and a private dance in a separate VIP room is $150 for 30 minutes, or $250 for one hour, for which the Dancer must pay Defendant $50 or $100, respectively.

40.     As set forth below, these deductions are in contravention of applicable law.

41.     In addition, Defendant also subjects Dancers to mandatory tip-outs. That is, Dancers are required to tip certain of Defendant's employees.  Importantly, the individuals that Defendant requires its Dancers to share their tips with do not provide customer service.

42.     Upon information and belief, Defendant uses these tips paid by dancers to offset Defendant's ordinary business expenses.  Stated another way, Defendant requires Dancers to tip these individuals so that the Goldrush Showbar can then reduce its labor costs by having the Dancers supplement the compensation Defendant pays its other employees.

43.    The number of individuals Dancers are required to tip is numerous and the tip amount is significant.   Defendant has a *mandatory* tip out policy whereby Dancers must each tip a minimum of (i) $5 to the "House Mom," (ii) $10 or 10% of the Dancer's nightly total to the club's DJ, whichever is greater, and (iii) $16 to the "Floor Man" (a club employee who patrols the private sections of the club).  The aforementioned amounts are the required minimum tip.

44.    In addition, Dancers are also required to tip the valet attendant. Notably, Dancers are charged $1-2 for valet service regardless of whether they park their car with the valet.  Accordingly, Dancers are required to tip Defendant's other employees a significant amount for each shift worked.

45.    As a result of the mandatory house fees, required tip-outs, and assessed fines, Dancers sometimes receive little to no actual compensation despite hours of work.

## Additional Control

46.    The Goldrush Showbar requires Dancers to wear certain types of "stripper" clothes, and shoes of a minimum heel length. In addition, Defendant does not pay for the cost of laundering or maintaining these unique uniforms. Other rules are also enforced, such as a prohibition on any denim clothing.

47.     Exemplifying the degree of control Defendant has over Plaintiff and members of the Class, Dancers are not permitted to select their own music.

48.     Defendant also requires Dancers to act as vendors when they are not performing.   Dancers must buy sets of merchandise from Defendant, including promotional t-shirts and certain alcoholic beverages (such as "body shots") with the Dancers' personal cash or by putting the cost of the merchandise on a bar tab. In order to recoup this expense, the Dancers must resell the merchandise.   Dancers may not return unsold merchandise to the Defendant; the Dancers are forced to keep merchandise they cannot resell, incurring a loss to their personal finances.

49.     Dancers must also accept "G-Bucks" as a possible form of payment or tips from customers.   G-Bucks are purchased from the club by customers at a premium over legal currency.   (On information and belief, approximately $115 U.S. will purchase 100 G-Bucks).   Dancers must exchange G-Bucks into legal currency through Defendant, at a discount.   Currently, Defendant will only pay $94 U.S. for every 100 G-Bucks turned in by a Dancer. Dancers must accept whatever exchange rate Defendant chooses to impose.

50.     As a result, customers using G-Bucks who believe that they are tipping or paying Dancers a certain amount are actually tipping them less, because Dancers do not get a $1-per-1 G-Buck exchange.   Defendant profits at the expense

of the Dancers by selling the G-Bucks to customers at a premium and redeeming them to Dancers at a discount.

51.     Defendant exerts further control over Dancers by requiring Dancers who drive to work to hand over their personal car keys until the end of their shift.

52.     Dancers may not leave the club until they complete a "checkout sheet" which must be approved by Defendant. If a Dancer drove to work, her car keys will not be returned by Defendant until the checkout sheet is completed. The checkout sheet includes the following:  i) Dancers must submit to a breathalyzer test; ii) if a Dancer did not drive herself to work, she must prove to Defendant that she has a method of transportation to get home; iii) the Dancer must prove that she tipped the Floor Man, House Mom, DJ, and valet, and iv) the Dancer must prove that she paid her House Fees and that she closed any open bar tab.

53.     In short, Defendant maintains significant supervision and control over Plaintiff and members of Class and set the rules governing the conditions under which Dancers work.   Such rules include: (i) Dancers are required to sell merchandise on the floor, risking their personal cash, (ii) Dancers must wear clothing approved by Defendant, (iii) Dancers must appear at special scheduled events and participate in the "Review," (iv) Dancers must accept G-Bucks from customers and exchange them for less than $1 per G-Buck, (v) Dancers must

charge a fixed rate for certain types of dances, (vi) Defendant controls which music a Dancer may perform to (in other words, a Dancer cannot select her own music), (vii) Dancers must share tips with other employees, with Defendant dictating which employees must be tipped and the minimum amount of the tip, and (viii) Dancers may not leave the club until they complete the checkout sheet to Defendant's satisfaction.

54.    In addition, Defendant prohibits Dancers from doing a number of activities while on duty.  Such prohibitions include: (i) leaving the stage until the end of the Dancer's routine unless excused by the DJ, (ii) changing into street clothes before the end of the Dancer's shift, (iii) wearing denim, and (iv) using downtime for personal pursuits such as reading or studying.

55.    Defendant has been unjustly enriched to the detriment of the Class by: (i) requiring Dancers to pay money out of their tips to pay for the ordinary business expenses of Defendant; (ii) requiring Dancers to forfeit a portion of their tips to Defendant; (iii) paying Dancers less than the mandated minimum wage while failing to comply with the requirements for doing so; and (v) failing to pay Dancers premium overtime compensation for all hours worked in excess of forty in a work week.

56.     At all times relevant to this Complaint, Plaintiff believed she was, and in fact was, an employee of Defendant.

57.     Evidence generally reflecting the number of uncompensated hours worked by Dancers in the possession of Defendant.

58.     While Plaintiff is unable to state at this time the exact amount owed to the Class, Plaintiff believes that such information will become available during the course of discovery.  Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer.  *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## COLLECTIVE ACTION ALLEGATIONS

59.     Plaintiff brings this action on behalf of the Nationwide Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).

60.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

61.     Plaintiff and the Class she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policies, practices and customs regarding Defendant's pay practices.

62.     Defendant has acted willfully and has engaged in a continuing violation of the FLSA.

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
### (On Behalf of the Nationwide Collective Class)

63.     Plaintiff, on behalf of herself and the Nationwide Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

64.     At all relevant times, Defendant has had gross revenues in excess of $500,000.

65.     At all relevant times, Defendant has been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

66.     At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the Nationwide Collective Class Members within the meaning of the FLSA.

67.     Pursuant to Defendant's compensation policies, rather than pay Dancers the federally-mandated minimum wage, Defendant improperly classified Plaintiff and other Dancers as independent contractors.

68.     As a result of the Defendant's willful practices, Defendant was not entitled to pay Plaintiff and the members of the Nationwide Collective Class less than the mandated minimum wage for all hours worked.

69.     Defendant has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

70.     Due to Defendant's FLSA violations, Plaintiff, on behalf of herself and the members of the Nationwide Collective Class, are entitled to recover from the Defendant, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT OVERTIME WAGE VIOLATIONS
### (On Behalf of the Nationwide Collective Class)

71.     Plaintiff, on behalf of herself and the Nationwide Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

72.     At all relevant times, Defendant has had gross revenues in excess of $500,000.

73.    At all relevant times, Defendant has been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

74.    At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the Nationwide Collective Class Members within the meaning of the FLSA.

75.    At relevant times in the period encompassed by this Complaint, Defendant has had a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek due to Defendant's improper classification of Plaintiff and Dancers as independent contractors.

76.    Defendant has violated and, continue to violates, the FLSA, 29 U.S.C. §§ 201 *et seq*.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

77.    Due to Defendant's FLSA violations, Plaintiff, on behalf of herself and the members of the Nationwide Collective Class, are entitled to recover from the Defendant, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Nationwide Collective Class, prays for judgment against Defendant as follows:

A.     Designation of this action as a collective action on behalf of the Nationwide Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

B.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

C.     An award of unpaid minimum wages to Plaintiff and the members of the Class;

D.     An award of unpaid overtime wages to Plaintiff and the members of the Class;

E.     Restitution of wages and gratuities improperly retained by Defendant;

F.     An award of liquidated damages to Plaintiff and members of the Class;

G.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Class;

H.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

This 11th day of April, 2014.

**/s/Anthony C. Lake**
Anthony C. Lake, Esq.
Georgia Bar No. 431149
**GILLEN WITHERS & LAKE, LLC**
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone: (404) 842-9700
Facsimile: (404) 842-9750
E-mail: aclake@gwllawfirm.com

Thomas A. Withers
Georgia Bar No. **772250**
**GILLEN WITHERS & LAKE, LLC**
8 East Liberty Street
Savannah, Georgia 31412
Telephone:  (912) 447-8400
Fax:          (912) 233-6584
E-mail:       twithers@gwllawfirm.com

**CARTER CROMWELL LAW GROUP**
William Cromwell
300 Galleria Parkway, Ste. 1000
Atlanta, GA 30339
(678)-384-5626

**CARLSON LYNCH LTD**
Gary F. Lynch (to be admitted *pro hac vice*)
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Telephone: 412-322-9243
Facsimile: 412-231-0246

**DEL SOLE CAVANAUGH STROYD**
Benjamin J. Sweet (to be admitted *pro hac vice*)
Edwin J. Kilpela, Jr. (to be admitted *pro hac vice*)
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Tel: (412) 261-2393
Fax: (412) 261-2110

***Attorneys for Plaintiff***